IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
    vs.                         )       CRIMINAL NO. 25-MJ-31 KRS
                                )
**CHELSEA NAIDA RUIZ**,         )
                                )
        Defendant.              )

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court for a hearing on February 11, 2025, regarding Defendant's *Motion to Revoke Detention Order and Request Immediate Release with Pretrial Conditions*, filed January 29, 2025. (Doc. 28.) The Court has conducted a *de novo* review of the Criminal Complaint and Amended Criminal Complaint, (Docs. 1 and 7), the Pre-trial Services report, (Doc. 16), the Order of Detention Pending Trial (Doc. 17), the audio recording of the Detention Hearing held before Magistrate Judge Sweazea, the Defendant's *Motion to Revoke Detention Order* and attached exhibits (Doc. 28), the United States' Response with attached exhibits and supplemental exhibits (Docs. 31 and 32), the Defendant's Reply and attached exhibits (Doc. 33), and the applicable law, and heard the parties' arguments. For the following reasons, the Court will deny the motion.

  *I.      Procedural Background*

On January 15, 2025, an amended criminal complaint was filed charging the Defendant with a violation of 8 U.S.C. 1324(a)(1)(A)((ii), transporting an illegal alien. The Defendant had her initial appearance on the amended criminal complaint also on January 15, 2025. A detention

hearing was set for January 21, 2025.  In preparation for the hearing, the Defendant was

interviewed, and a Pretrial Services report was filed that included a recommendation of release.

After hearing from counsel for the Defendant and for the government, Judge Sweazea

ordered the Defendant detained, noting he found the weight of the evidence to be strong, based on

the facts in the charging document as well as what was proffered by the attorney for the

government. Judge Sweazea was particularly concerned with the Defendant's history of failures

to appear in prior cases, along with her prior gun conviction.  Judge Sweazea noted the prior

conviction is for a misdemeanor charge, but further noted that in that case she violated the law

related to gun possession and now, in this case, both she and her co-Defendant were in possession

of firearms during the alleged crime.  Further, Judge Sweazea explained that the Defendant has no

stable residence, no approved third-party custodian, no stable employment, and no ties to the

District of New Mexico.  Based on all these factors, Judge Sweazea found by a preponderance of

the evidence that no condition or combination of conditions can reasonably assure the presence of

the defendant at future proceedings.  This appeal follows.

II.     *Standard of Review and Applicable Law*

"The standard of review for the district court's review of a magistrate judge's detention or

release order under [18 U.S.C.] § 3145(a) is de novo." *United States v. Cisneros*, 328 F.3d 610,

616 n.1 (10th Cir. 2003). "A defendant may be detained pending trial if a judicial officer finds that

no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of any other person and the community." *United States v. Mobley*, 720

Fed. Appx. 441, 444 (10th Cir. 2017) (citing 18 U.S.C. § 3142(e)(1)).  "The government bears the

burden of proving risk of flight by a preponderance of the evidence and dangerousness to any other

person or the community by clear and convincing evidence." *Id.* (citing *Cisneros,* 328 F.3d at 615).

    III.    *Analysis*

In deciding whether to release or detain a defendant pending trial, the Court considers the following factors set forth in Section 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The offense of transporting illegal aliens is serious, carrying with it a statutory maximum sentence of five years. Although any sentence imposed would be based on the Sentencing Guidelines and potentially lower than five years, the Defendant nevertheless faces a potentially serious term of incarceration, much longer than she has ever spent in custody, incentivizing flight.

Looking to the circumstances alleged in this case, at the time Defendant was encountered by Border Patrol agents, she was driving a black SUV in an area "notorious for alien smuggling," along with her co-Defendant passenger and four illegal aliens. *See Complaint* (Doc. 7). When agents initiated the traffic stop, the Defendant stopped, but did not initially roll down her window

as directed. *Id*. Although she did eventually roll down the window, she apparently did not remove the keys from the ignition as directed by the agents. As a result, she was directed to exit the vehicle which she apparently did without incident. *Id*.; *See also Government Response* (Docs. 31 and 31-1). The Defendant and co-Defendant both disclosed to agents that they possessed firearms, that were each loaded with rounds chambered, at the time of this traffic stop. The Defendant's gun was locked in her purse, but her co-Defendant's gun was out in the open, on the passenger side floorboard. (Doc. 7). While neither firearm was brandished or discharged, the Court notes that the presence of firearms during the commission of a crime heightens the risk to everyone involved. The Defendant told agents that her co-Defendant told her to take him to Animas so that he could do a favor for a friend and that she would be able to take photographs once they were done. (Doc. 7). She further told agents that when she saw how the people she picked up were dressed, she assumed they were illegal aliens. *Id*. The designated material witness in this case told agents that when the illegal aliens entered the SUV, a female, who the witness later realized with the driver/Defendant, directed them to get down and stay down. *Id*. In sum, the nature and circumstances of the alleged offense are serious, with serious consequences, and counsel against release.

Notably, this was the third time in 11 days that the same black SUV was encountered, and the second confirmed time the Defendant and co-Defendant were encountered, in the same general, remote area of New Mexico known for smuggling activity. On January 1, 2025, the Defendant was a passenger, and her co-Defendant was the driver, of the same black SUV stopped around Animas, New Mexico, on Hidalgo County Road 1, a remote ranch road near the U.S.-Mexico border. The stop occurred after agents saw the SUV repeatedly traveling northbound and southbound on the road several times within a short amount of time, in a manner that is consistent

with other smuggling schemes. *See Government Response, Exhibit 2* (Doc. 31-2). After their immigration inspection, in which the agents found only Defendant and co-Defendant in the SUV, they were released. *Id.* Just two days later, on January 3, 2025, the same black SUV was observed near a vehicle wreck, and two people who appeared to run from the wreck were seen entering the SUV which then left the area. *See Government Supplemental Exhibit, Exhibit 6-7* (Docs. 32-1 and 32-2). Although there is no information regarding who was in the SUV or who was picked up that day, the situation is highly suggestive of activity similar to that alleged in this complaint.

The weight of the evidence against the Defendant is strong. As noted, by Defendant's own admission, she believed the people she picked up on January 11, 2025, were present illegally and she was driving them towards Tucson, as directed by the co-Defendant. (Doc. 7). Further, the designated material witness told agents that she is a Mexican citizen and that the group entered the United States from Mexico illegally early on January 6, 2025. *Id.* The evidence strongly suggests a conviction and period of incarceration, further incentivizing flight and counseling against release.

The Defendant is a United States citizen, with no significant ties to Mexico. Neither has she significant ties to the District of New Mexico. *See Pretrial Services Report* (Doc. 13). Further, the Defendant's work and residential history for the past few years is unclear. At the detention hearing before Judge Sweazea, and in the Pretrial report, it appeared that the Defendant may have been living in Arizona anywhere from just over one month to as long as six months – her father told Probation she'd been in Arizona since December, while her mother told Probation that she had been living in Arizona for four to six months, which goes back to September or July. (Doc. 13). At the hearing on February 11, 2025, the Defendant clarified through counsel, that she and two of her children were in Arizona from March 2023 to September 2023, helping the Defendant's mother move and get settled. According to the information provided, the whole family visited

Arizona for Thanksgiving in November 2024, all returned home to Indiana, and then in December 2024, the Defendant and co-Defendant returned to Arizona. However, none of this information is consistent with the information in the Pretrial Services report that the Defendant worked at Fiesta Canning in Douglas, Arizona for a year. *Id.*

The Defendant has eight prior charges, albeit mostly for minor offenses with only two convictions. *Id.* One of those convictions is for possessing a firearm without a license, and now in this case, she and the co-Defendant each possessed loaded and chambered firearms. (Doc. 7). While there is nothing inherently illegal in their possession of those firearms, the presence of firearms in the midst of any other felony heightens the danger to all involved, would enhance the Defendant's sentencing range if convicted, and is concerning to this Court as it was to Judge Sweazea. Further, it appears that on five separate occasions, in three of her prior cases, the Defendant failed to appear for court as directed. *Id.*

The Defendant changed her request on the day of the hearing and asked to be released to the halfway house, rather than to Arizona or Indiana, arguing that the conditions are stringent enough to reasonably assure her presence for future proceedings. The Court is not convinced. Her four children are all in Indiana with their grandparents. Her father is in Indiana. Her mother is in Arizona. Her lifelong partner and co-Defendant in this case is in federal custody on these charges. She has every incentive to leave New Mexico, whether she goes back to Indiana or to Arizona, attempt to meld into the fabric of society, and avoid returning to court in New Mexico. While she argues that the rules at the halfway house are strict, they include getting a job and going to work. Once out of the halfway house, even for legitimate work, there is little incentive for the Defendant not to return to her family, none of whom are in New Mexico except her detained co-Defendant.

The Defendant argues that the Court should follow the Ninth Circuit's holding in *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990), that "community" as applied in 18 U.S.C. § 3142(g)(3) refers to any community within the United States and should not be limited to the district where the defendant faces charges.  However, this is not binding precedent in the Tenth Circuit and the Court was unable to find any other Circuit that has agreed to adopt this reasoning. Even if the Court disregards the Defendant's lack of specific ties to New Mexico, the concern that she will not appear for future court hearings is not assuaged.  While Defendant may not want to flee to Mexico, she remains a risk of disappearing into the American society in an attempt to avoid this Court's jurisdiction.

*IV.  Conclusion*

Having considered the foregoing factors set forth in 18 U.S.C. § 3142(g) and the information presented, the Court **FINDS** by a preponderance of the evidence that no condition or combination of conditions would reasonably assure the defendant's appearance as required.

**IT IS HEREBY ORDERED** that Defendant's *Motion to Revoke Detention Order and Request Immediate Release with Pretrial Conditions* is denied. Accordingly, the defendant shall remain detained pending trial in this matter.

_____
THE HONORABLE SARAH M. DAVENPORT
UNITED STATES DISTRICT JUDGE